UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Brandon Holm

    v.                                     Civil No. 11-cv-32-JD
                                             Opinion No. 2011 DNH 216

Town of Derry and
Dennis Sienkiewicz


O R D E R

Brandon Holm brought suit in state court against the Town of Derry and Dennis Sienkiewicz, an emergency medical technician with the Derry Fire Department, alleging state and federal claims arising from an altercation between Holm and Sienkiewicz.[1]  The defendants removed the case to this court.  The defendants now move for summary judgment, contending that Holm's claims are barred by the defendants' immunity, that Holm cannot prove his federal claims against the town, and that Holm cannot prove his claimed damages without an expert witness.  Holm objects to the motion.

---

[1] The defendants use two spellings, Sinkiewicz and Sienkiewicz, while Holm uses only Sienkiewicz.  Because the pleadings use the spelling "Sienkiewicz," the court also will use that spelling.

Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of moving for or opposing summary judgment, facts must be supported by citations to the record. Fed. R. Civ. P. 56(c)(1)(A); see also LR 7.2(b). In deciding a motion for summary judgment, the court resolves all reasonable inferences in favor of the nonmoving party. Barry v. Moran, --- F.3d ---, 2011 WL 5840263, at *4 (1st Cir. Nov. 22, 2011).

Background[2]

On August 6, 2009, Brandon Holm took his girlfriend, Kimberly Hartery, to a doctor's appointment and waited for her in the reception area. Hartery was intoxicated when she arrived for the appointment. Her doctor, Dr. Alanso, was concerned that Hartery might have alcohol poisoning and decided to send her to the hospital.

The office administrator, Barbara Quealy, overheard Hartery's conversation with medical staff while Hartery was being treated. Quealy was aware of previous problems between Holm and

---

[2]The background facts are taken from properly supported facts provided by the parties.

Hartery and knew that in the past Holm had provided Hartery, an alcoholic, with alcohol.  Hartery told the medical staff that she was afraid of Holm and that he had threatened her.  The office contacted the Derry Fire Department ("DFD") to transport Hartery to Parkland Medical Center because of her intoxication.  Quealy and Dr. Alanso also devised a plan to get Hartery to the hospital without Holm by moving her to the ambulance through a back door of the office.

   Dennis Sienkiewicz arrived in the ambulance with other EMTs.  Dr. Alanso told Sienkiewicz to keep Holm away from Hartery.  Hartery was then transported to Parkland Medical Center with Sienkiewicz and other EMTs in the ambulance.  After the ambulance left, the office staff told Holm that Hartery was being transported to Parkland Medical Center and suggested that he proceed slowly to the hospital.  Despite that advice, Holm caught up with the ambulance and arrived at the emergency room entrance hospital at the same time.

   Holm parked his car and approached the ambulance.  Sienkiewicz intercepted Holm and told him to leave.  Sienkiewicz also called the Derry police.  When Holm attempted to get into his car to leave, Sienkiewicz told him he was making a citizen's arrest and put him on the ground.  Sienkiewicz held Holm in a headlock until Holm was able to free himself.  Holm got into his

car and left.  Holm contends that he was injured in the altercation.

Holm reported the incident to the Derry police the same day.  Sienkiewicz was charged with misdemeanor assault, and Holm was not charged.  After making his police report, Holm went to the hospital and was seen for complaints of neck and shoulder pain, along with minor facial cuts or abrasions.  Holm returned to the emergency room on August 11 and September 16, 2009.  He received physical therapy for back pain from September until early November of 2009.

The DFD has policies regarding how its employees handle potentially dangerous situations.  The DFD conducts training on its policies, and Sienkiewicz attended training.  The DFD has no policy directly pertaining to its employees' making citizen's arrests.

## Discussion

In his complaint, Holm alleges state law claims that Sienkiewicz, acting as an employee of the Town of Derry, assaulted him, that Derry is vicariously liable for Sienkiewicz's actions, and that Derry was negligent in failing to train and supervise Sienkiewicz.  Holm also brings a federal claim under 42 U.S.C. § 1983 in which he alleges that "the defendants" used

excessive force on him in violation of the Fifth, Eighth, Ninth, and Fourteenth Amendments. Derry and Sienkiewicz move for summary judgment, asserting immunity under New Hampshire Revised Statutes Annotated ("RSA") § 507-B:5, § 507-B:2, and § 507-B:4, IV; Sienkiewicz's qualified immunity as to the § 1983 claim; a lack of claims against Derry under § 1983 and a lack of evidence to support any § 1983 claim against Derry; and Holm's inability to prove damages.

A.  State Law Claims

   Derry and Sienkiewicz each claim immunity from liability on Holm's state law claims based on different provisions of RSA chapter 507-B. Their defenses are addressed separately.

   1.  Derry

   Derry asserts immunity from Holm's claims based on RSA 507-B:5, which provides in pertinent part: "No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." RSA 507-B:2 provides:

> A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault

5

>     attributable to it, arising out of ownership,
>     occupation, maintenance or operation of all motor
>     vehicles, and all premises; provided, however, that the
>     liability of any governmental unit with respect to its
>     sidewalks, streets, and highways shall be limited as
>     provided in RSA 231 and the liability of any
>     governmental unit with respect to publicly owned
>     airport runways and taxiways shall be limited as set
>     forth in RSA 422.

Under RSA 507-B:7-a, however, a municipality cannot claim immunity under RSA 507-B with respect to a liability for which it has obtained insurance.

Derry contends that because Holm's claims against it do not arise out of the town's ownership, maintenance, or operation of motor vehicles or its premises, the claims are barred by RSA 507-B:5.  Neither party addresses the exception provided by RSA 507-B:7-a, and therefore for purposes of summary judgment, the exception for insurance coverage is not considered.

In response to Derry's motion, Holm ignores the requirements of RSA 507-B:5 and 507-B:2 and instead argues that the defendants, jointly, are not entitled to immunity due to a lack of good faith.  Because good and bad faith are not pertinent to Derry's immunity under RSA 507-B:2, Holm fails to show any dispute as to material facts with respect to Derry's immunity defense.  Therefore, Derry is entitled to summary judgment in its favor on Holm's state law claims alleged in Counts I and II.

2.  <u>Sienkiewicz</u>

When the incident with Holm occurred on August 6, 2009, Sienkiewicz was an EMT with the DFD.  As such, he was an employee of Derry.[3]  Immunity is provided to municipal employees as follows:

> If any claim is made or any civil action is commenced against a present or former employee, trustee, or official of a municipality . . . claiming damages, the liability of said employee or official shall be governed by the same principles and provisions of law and shall be subject to the same limits as those which govern municipal liability, so long as said employee or official was acting within the scope of his office and in good faith.

RSA 507-B:4, IV.  Holm contends that Sienkiewicz did not act with good faith when the altercation occurred.[4]

The statute does not define "good faith," and the New Hampshire Supreme Court has not addressed the meaning of "good faith" for purposes of RSA 507-B:4, IV, in a published decision. In an unpublished order, the New Hampshire Supreme Court concluded "that the legislature, in protecting municipal employees under RSA 507-B, IV, intended to except from the statute only 'bad faith' conduct rising to the level of

---

[3] It appears to be undisputed that Sienkiewicz was an employee of Derry.

[4] Holm does not dispute that Sienkiewicz was acting within the scope of his job as an EMT with the DFD when he grabbed Holm's arm and then held him in a headlock.

7

intentional misconduct."  Charles J. Bowser, Jr., Special Administrator of the Estate of Kenneth Countie v. Town of Epping, Case No. 2010-0868, at *3 (N.H. Sept. 16, 2011).  Under the New Hampshire Supreme Court Rules, however, "[a]n order disposing of any case that has been briefed but in which no opinion is issued, whether or not oral argument has been held, shall have no precedential value and shall not be cited in any pleadings or rulings in any court of this state" except for purposes that are not applicable here.  Sup. Ct. R. 20(2).

   Neither party addresses the effect of Supreme Court Rule 20(2) on the use of the Bowser order for purposes of this case.  Based on Rule 20(2), it appears that Bowser should not have been cited here and lacks precedential value.

   In Cannata v. Town of Deerfield, 132 N.H. 235 (1989), which is cited by the parties, the court considered RSA 31:104, which provides that no municipal executives, specified in the statute, "shall be held liable for civil damages for any vote, resolution, or decision made by said person acting in his or her official capacity in good faith and within the scope of his or her authority."  The court concluded that the plaintiffs' "conclusory references to 'wanton' conduct by the selectmen" did not obviate the protection provided under RSA 31:104.

Holm's opposition to summary judgment is based on more than conclusory references to wanton conduct. The record shows that Sienkiewicz physically prevented Holm from leaving the emergency room area by throwing him to the ground and holding him in a headlock. Although Sienkiewicz attempts to excuse his conduct by explaining that he thought Holm had committed a crime and that he was trying to make a citizen's arrest, his explanation depends on his credibility and does not establish that he was acting in good faith. In contrast, resolving reasonable inferences in Holm's favor, a jury could conclude that Sienkiewicz intentionally assaulted Holm, knowing that he had no lawful basis for doing so, because of what Sienkiewicz had been told about Holm, because of their verbal exchange, or for other reasons.[5]

Therefore, a factual dispute exists as to whether Sienkiewicz acted in good faith, and, as a result, Sienkiewicz is not entitled to summary judgment based on immunity under RSA 507-B:4, IV.

---

[5] As such, even if the court's reasoning in <u>Bowser</u> were applied here, Sienkiewicz would not succeed for purposes of summary judgment.

B. <u>Federal Claims</u>

For purposes of his § 1983 claim, Holm alleges that the "defendants" used excessive force in violation of the Fifth, Eighth, Ninth, and Fourteenth Amendments that caused harm to his neck, shoulder, and other parts of his body. Sienkiewicz moves for summary judgment on the ground that he is entitled to qualified immunity. Derry moves for summary judgment on the ground that because it has no policy or custom that caused the altercation between Holm and Sienkiewicz, it is not liable under § 1983.

1. <u>Sienkiewicz</u>

Sienkiewicz asserts that he is entitled to qualified immunity from Holm's § 1983 claim because the altercation occurred when Sienkiewicz attempted to arrest Holm, based on his reasonable belief that Holm had committed a crime and was a threat to Hartery. "The qualified immunity inquiry is a two-part test. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." <u>Air Sunshine, Inc. v. Carl</u>, --- F.3d ---, 2011 WL 6004383, at *3 (1st Cir. Dec. 2, 2011).

10

As alleged in the complaint, Holm's claim of excessive force in violation of the constitution relies on the Fifth, Eighth, Ninth, and Fourteenth Amendments.[6]  Ordinarily, excessive force is raised as a violation of the Fourth Amendment's prohibition against unreasonable seizure.  See Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  The Eighth Amendment pertains to treatment of convicted inmates, which is inapposite to the circumstances presented in this case.  See Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002).  The Ninth Amendment provides only that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people," and Holm has not articulated an actionable claim under the Ninth Amendment.  See, e.g., Jenkins v. C.I.R., 483 F.3d 90, 92 (2d Cir. 2007); Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 182 (1st Cir. 1997); Cromer v. Bauman, 2011 WL 1167042, at *5 (W.D. Mich. Feb. 9, 2011).

To the extent Holm intended to allege a substantive due process violation under the Fifth and Fourteenth Amendments, that theory would not support a claim of excessive force in the

---

[6]Holm is represented by counsel and, therefore, is not entitled to any special treatment that might be afforded to a pro se litigant.

context of law enforcement officers making an arrest, which must be analyzed under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 394-95 (1989).  Because Sienkiewicz was not a police officer but instead was an EMT at the time of the altercation, however, the prohibition in Graham may not apply.  In his objection to summary judgment, Holm argues that his excessive force claim is based on the Fourth Amendment.  That basis for his claim is not included in the complaint, and it cannot be raised by reference in his objection to summary judgment.

Therefore, the parties have not identified specifically the constitutional right asserted in Holm's claim nor addressed the question of whether a right was violated by Sienkiewicz's actions.  Similarly, the parties do not address whether any right asserted to support Holm's claim was clearly established at the time of the altercation.  As such, Sienkiewicz has not provided a basis for considering qualified immunity under the applicable standard.

Instead, Sienkiewicz argues that he had a right to make a citizen's arrest because he thought Holm had committed a crime and was a threat to Hartery.  In support, Sienkiewicz cites RSA 627:5, IV, which states that a "private person acting on his own is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to arrest or

prevent the escape from custody of such other whom he reasonably believes to have committed a felony and who in fact has committed that felony." He cites the criminal threatening statute, RSA 631:4, as support for his belief that Holm had committed a crime. RSA 631:4 lists misdemeanor offenses of criminal threatening except for threats of criminal violence, threats of using biological or chemical substances for certain purposes, and use of a deadly weapon.

The record does not support Sienkiewicz's defense based on a theory that he acted reasonably because he intended to make a citizen's arrest. Under the summary judgment standard, the properly supported facts are taken in the light most favorable to Holm.

Holm testified that when he arrived at the emergency room area where the ambulance had transported Hartery, Sienkiewicz approached him, Holm identified himself, and Holm said he wanted Hartery to know that he was there. Sienkiewicz grabbed Holm's shirt and told Holm that under doctor's orders he was not to go near Hartery. Holm told Sienkiewicz that his actions were assault and that he would report him to the Derry police.

Holm began to walk back to his car and heard Sienkiewicz on the radio calling the Derry police. When Holm got back to his car, Sienkiewicz blocked the door and told him he was making a

citizen's arrest. Sienkiewicz grabbed Holm around the neck in a choke hold and then slammed him to the ground, holding him around the neck. Holm was able to struggle free and get back to his car. Sienkiewicz blocked Holm from getting into the car, and Holm again told Sienkiewicz that he was going to report the incident to the police. Holm then was able to get into his car and drove to the police station to report the incident.

As Sienkiewicz admits, he had no reason to believe that Holm had committed a felony, and the record shows that Holm was not charged with a felony or any crime. Sienkiewicz argues, however, that he thought he had to stop Holm to protect Hartery from Holm. Any subjective intent that Sienkiewicz may have held at the time, that he believed justified his decision to make a citizen's arrest, does not establish that he is entitled to qualified immunity.[7] See, e.g., Lopera v. Town of Coventry, 640 F.3d 388, 396-97 (1st Cir. 2011) (explaining objective nature of inquiry). Therefore, Sienkiewicz is not entitled to qualified immunity based on his belief that he was conducting a citizen's arrest.

---

[7]Sienkiewicz does not show or even argue that a reasonable EMT in his position could have believed his conduct was lawful. Indeed, Sienkiewicz admitted, in colorful language, that his conduct was wrong.

14

2. <u>Derry</u>

Derry moves for summary judgment on Holm's § 1983 claim, arguing that Holm cannot prove municipal liability for purposes of that claim. For purposes of a § 1983 claim against a town, "[l]iability only attaches where the municipality causes the deprivation through an official policy or custom." <u>Rodriguez v. Municipality of San Juan</u>, 659 F.3d 168, 181 (1st Cir. 2011). "Thus, a plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." <u>Haley v. City of Boston</u>, 657 F.3d 39, 51 (1st Cir. 2011) (internal quotation marks omitted).

Holm argues in opposition to summary judgment that Sienkiewicz's actions were "due to a policy or custom of the Town of Derry in the inadequate training of those acting under color of state law and a complete lack of policy as to how [to] handle citizen's arrests and the protection of patients in the care of EMT employees."[8] Doc. no. 15 at 6. Derry provides evidence of DFD's policies and training and argues that based on the record,

---

[8]As the defendants noted in their motion, Holm did not plead municipal liability in his § 1983 claim and instead based the claim on vicarious liability, which is not actionable under § 1983. <u>See</u> <u>Haley</u>, 657 F.3d at 51.

15

DFD's policies did not cause the altercation and that Sienkiewicz was properly trained.

Derry cites a written policy, DFD Standard Operating Guideline 300.02 EMS-Incident Scene Safety, to show that its policies did not cause the altercation between Sienkiewicz and Holm. Pertinent to this case, the Guideline provides that when a scene is determined to be unsafe, personnel should not enter and instead "should contact fire alarm and request assistance." In addition, DFD personnel should allow the police to secure a scene that involves a possible hostile environment.

DFD personnel also are trained in patient care protocols, which include protocols for handling dangerous or crime scene incidents. Sienkiewicz attended training in April of 2009 which addressed patient care protocols at a crime scene and in response to domestic violence. The patient care protocol for crime scene incidents, addressed during training, taught EMTs, among other things, to contact the police if they believe a crime has been committed. The protocol for domestic violence taught, among other things, that EMTs should wait for the police to handle any potentially dangerous individuals.

Holm argues that the lack of training with respect to citizen's arrests caused the altercation in his case. The DFD policies and training, however, require EMTs to rely on

16

protection and law enforcement by the police and do not suggest circumstances when a citizen's arrest would be appropriate. Therefore, the policies and protocols operate against an EMT conducting a citizen's arrest. Holm has not demonstrated disputed facts with respect to the DFD policies and training.

The undisputed facts supported by the record in this case show that the DFD policies and EMT training did not cause or play any part in Sienkiewicz's actions. The Town of Derry is entitled to summary judgment in its favor on Holm's § 1983 claim.

C. Damages

The defendants contend that they are entitled to summary judgment as to damages related to certain claimed injuries because Holm cannot prove those injuries are a result of the altercation with Sienkiewicz. The defendants note that the deadline for expert witness disclosure has passed and that Holm failed to disclose any expert witnesses. The defendants argue that Holm cannot support his claims for damages due to knee injury, back injury, depression, medical bills, and lost wages and earning capacity without expert testimony.

In response, Holm asserts that his treating physicians and other medical personnel will testify as experts about his treatment. He represents that he provided a list of medical

personnel who might testify on his behalf. He asserts that because the medical personnel are not retained experts, he complied with all disclosure requirements.

Parties are required to disclose to the opposing parties the identity of any witness who is intended to testify as an expert at trial. Fed. R. Civ. P. 26(a)(2)(A). If the witness is retained by that party as an expert, the witness must also provide a report that meets certain requirements. Fed. R. Civ. P. 26(a)(2)(B). A witness who is not required to provide an expert report under Rule 26(a)(2)(B) must provide the subject matter on which the witness will testify and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

An unretained witness with specialized knowledge, such as a treating physician, may give opinions based on the witness's own involvement in the circumstances of the case when "his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation." Downey v. Bob's Discount Furn. Holdings, Inc., 633 F.3d 1, 6 (1st Cir. 2011). Treating physicians may not provide opinions, however, beyond those formed during their treatment of their patient that are reflected in their treatment notes. Gomez v. Rivera Rodriguez, 344 F.3d 103,

113 (1st Cir. 2003); <u>Talavera v. Municipality of San Sebastian</u>, ---- F. Supp. 2d ---, 2011 WL 4090902, at *1 (D.P.R. Sept. 15, 2011).

Under the discovery plan in this case, Holm was required to disclose his expert witnesses and provide the information required by Rule 26(a)(2) by July 1, 2011.  Holm represents that he disclosed his treating medical sources but provides no supporting evidence of his disclosure.  The record provided by the defendants, however, shows that Holm did not identify any expert witnesses and also failed to provide the disclosures required by Rule 26(a)(2)(C).  On the other hand, Holm disclosed as witnesses "Employees as set forth in produced medical records, Elliot Hospital" and "Employees as set forth in produced medical records, Granite State Therapy" with the names of the relevant employees as witnesses who may have knowledge about the circumstances of the case.

The defendants also contend that Holm's medical records lack any opinions or treatment notes that link his various complaints to injuries caused by Sienkiewicz.  They argue that in the absence of a link between treatment and the claimed injury, Holm lacks evidence of the damages he claims.  Holm contends that he can at least support damages based on the bruises and abrasions he received during the altercation with Sienkiewicz.

Holm did not disclose any expert witness, retained or not. He has not shown that his failure to comply with Rule 26(a)(2) was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Therefore, he will not be allowed to use any expert opinion testimony. <u>Id.</u> Holm may call medical personnel who can testify as fact witnesses about their treatment of him, which testimony will be limited to the facts of their treatment as supported by the contemporaneous medical records.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 14) is granted with respect to all claims against the Town of Derry, is denied with respect to all claims against Sienkiewicz, and is granted to the extent that the plaintiff is precluded from using any expert opinions and testimony during this case, including at trial.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 20, 2011

cc:   Corey M. Belobrow, Esquire
      Andrew Michael Kennedy, Esquire